the penalty, and stands as a security for the damages found; and in case of future damages, they also may be recovered by a *scire facias* on such judgment. If, however, this court interfere, they will deprive the obligee in this case of that remedy for future damages given him by the statute of *William.* It is immaterial whether in this instance there may or may not be such future damages, the rule of decision must be general, and if the court have a right to reverse this judgment, so have they all others upon bonds with collateral conditions. In a word, at common law the plaintiff had a right to the penalty on non-performance of the condition. He was obliged to enter a judgment for it, it being the sum demanded by the writ; but as this subjected him to a suit in equity, the statute was made to avoid giving the defendant the trouble of seeking relief in equity. As such provision was introduced for his benefit, he may waive it, and if he does, this court have no power to say he shall not. That the plaintiff has a right to the penalty at common law, on the condition being forfeited, *Blackstone* is 'in point. But the court will not relieve on motion, if the fact is disputed, but will put the party to his *audita querela.*—1 *Ray.* 439.

THE COURT OF APPEALS, at this term, *affirmed* the judgment *nisi,* and the plaintiff in error, on the 26th of January 1801, obtained an *injunction* from the Court of Chancery to stay proceedings on the same.

See the cases of *Harris and Wilmer* in the Court of Appeals, (E. S.) at June terms, 1817 and 1820.

## COURT OF APPEALS, JUNE TERM, 1800.

### QUYNN *vs.* THE STATE, use of PUE, *et. al.*

The surety in a collector's bond is not answerable for a sum of money directed by an act of assembly to be levied at a particular time, and which was not so levied, altho' he had in the court below withdrawn his plea and confessed a judgment.

ERROR to the General Court. The present was an action of debt brought by the defendant in error, who was plaintiff below, against the plaintiff in error,

ror, upon a writing obligatory dated the 17th of December 1793, executed by *William Goldsmith*, as collector of the county charges for Anne-Arundel county, with *Allen Quynn*, (the plaintiff in error,) and others, as his sureties, to the State of Maryland, with a condition in these words: "That if the above bound *William Goldsmith* shall well and faithfully execute his office, and the *several duties required of him by law*, and shall well and truly account for and pay to the justices of Anne-Arundel county court, or their order, the several sums of money which he shall receive, or be answerable for by law, at such time as the law shall direct, then the above obligation to be void." The defendant in the court below pleaded *general performance*, to which the plaintiff replied the replication in 2 *Harris's Entries*, 456, stating, that by an act of assembly passed at November session 1791, *ch.* 53, entitled, "An act to lay out certain roads in Anne-Arundel and Montgomery counties," it was, amongst other things enacted, that one road through, &c. should be laid out, &c. and that *Michael Pue*, *John Snowden* and *Caleb Dorsey*, were thereby appointed commissioners to lay out, &c. the same road, who accepted the said trust. That by the said act it was further enacted, that the justices of the peace of Anne-Arundel county, at their levy court to be held next after the first of January, and thereafter in the *last court* of the year annually, should levy a sum of money not exceeding two shillings and six pence current money on every one hundred pounds worth of assessable property in the said county, to be collected in the same manner, at the same times, and by the same persons, as other county taxes are collected, and should be paid quarter-yearly into the hands of the *said commissioners*, until the said road should be completed. That after the passing the said act, and before the making the said writing obligatory, at a levy court held next after the said first of January in the said act mentioned, to wit, at a levy court held at the city of Annapolis, in and for Anne-Arundel county aforesaid, on the *twenty-sixth day of November*, in the

year 1793, there was assessed and levied to the said commissioners for laying out the road through Anne-Arundel county aforesaid, by the justices of the peace for the said county, the sum of, &c. to be collected from the assessable property in the said county, and to be paid to the said commissioners pursuant to the directions of the said act. That the said *William Goldsmith*, in the writing obligatory mentioned, was duly authorised and appointed to collect the assessments and county taxes, &c. had notice, &c. did collect, &c. and refused to pay, &c. The defendant by his *rejoinder*, protesting that the assessment was not imposed—that the said *Goldsmith* did not collect and receive the said sum of, &c. rejoined *payment*. The defendant afterwards entered a *relicta verificatione*, and *confessed judgment* for the penalty of the bond, and costs, to be released on payment of, &c. from which judgment the cause was brought, by writ of error, to this court.

*Shaaff*, for the plaintiff in error. There are but two questions necessary to be considered in this case.

*First*, Whether the defendant in error has a cause of action, *admitting the pleadings to stand?* And

*Secondly*, What is the effect of the *relicta verificatione*, and judgment *by confession?*

1. As to the *first*. The act of assembly of 1791, *ch.* 53, *s.* 3, directed, "that the justices of the peace of Anne-Arundel county, at their levy court to be held next after the first of January next, and thereafter in the *last court* of the year annually, should levy a sum of money not exceeding," &c. The replication states, that the levy court met on the 26th of *November*, and made the assessment and levy in question. We answer, that such levy was not made by a *levy court authorised* by law to make it. The act of assembly of *October* 1780, *ch.* 26, *s.* 1, directs that the justices of the several county courts, *in court sitting*, shall, at their respective *June* or *August* courts, adjust the ordinary and necessary expenses of their several counties. That act prescribes also the form of the bond to be given by the collectors.

By the act of 1790, *ch.* 33, *s.* 2, the justices of the peace are directed to meet and lay the assessment as *heretofore.* The act of 1791, *ch.* 61, *s.* 2, does not change the time of laying the levy as it was established by the aforesaid act of 1780, *ch.* 26. It only authorises the courts to adjourn to the fourth Tuesday of November in each year, for the sole purpose of settling the accounts of the inspectors of tobacco. If the levy was laid at an adjourned court, it ought to have been at the August term, and should have been so stated in the replication; but if the court in November was not an adjourned court, then was the levy improperly made, because there is no act of assembly authorising it to be made at such a court. If on the other hand, it was an adjourned court, then also was the levy illegally laid, because the adjournment gives no other power than that of settling with tobacco inspectors. This is like the cases of the courts taking sheriff's bonds, and calling courts for that purpose. If the court is stated to have been held at an *improper time,* it will be fatal. Here *Goldsmith* was made the collector of taxes to be collected in 1793. This tax could not be collected in 1793. If then he was not bound to collect, the surety is not answerable. A man may, to be sure, as far as relates to himself, undertake to perform a thing, which he is not *ex officio* bound to perform; and he may make himself answerable by such undertaking, but he cannot thereby affect a person who is only bound for the performance of such man's *official duties.* Cites the case of *Johnson et. al. vs. The State,* 3 *Harr. and M'Hen.* 223.

2. What is the effect of the *relicta verificatione,* and judgment by confession? The judgment may be made to the replication, and the *relicta* to the rejoinder. A replication, in an action on a bond *like the present,* is necessary, to show what it is the plaintiff demands for the breach of the condition; and if it appears in this case, by his own showing, that he has no right to recover, the judgment must be reversed. If there had been no replication here, then this judgment

would be similar to one by confession in an action wherein there was *no declaration*; and many cases may be referred to where judgments of that kind have been reversed. 3 *Harr. & M'Hen.* 389, 408 4 *Harr. & M'Hen.* 351.

*Ridgely*, on the same side. The plaintiff in error was only a surety for *Goldsmith*, the *collector*, so far as he was *chargeable by law*, and as surety he cannot be bound beyond the scope of his engagement. 3 *Wils.* 530. This suit was brought in the name of the state, not for a debt *due to the state*, but for the benefit of others. It must therefore be shown by what act of assembly such a suit can be supported. The state being a body politic cannot sue or be sued without some statute authorises it. If there is no act of the legislature upon which this suit and recovery can rest, the judgment must be reversed. The money claimed in this action was directed to be levied at the *last levy court* of the year. By the act of *October* 1780, *ch.* 26, *s.* 1, the justices were authorised to lay the assessment for the county charge at their respective *June* or *August* courts. By the act of *November* 1788, *ch.* 13, the time of holding the courts in Anne-Arundel county was changed to *March, August* and *November*; by the act of 1790, *ch.* 33, it was again changed to the first Monday in *March* and fourth Monday in *September*; and by the act of 1791, *ch.* 61, it was further changed to the third Monday in *April* and *September*. By the *ninth section* of the act of 1790, *ch.* 33, the justices of the peace, or any three or more of them in each county, were directed to meet at the court-house of their county at the time appointed by law, for laying their county assessment, and required then and there to lay the assessment of their county as heretofore. The act of 1791, *ch.* 61, authorised the levy courts to adjourn to the fourth Tuesday in *November*, for the purpose of settling the accounts of inspectors of tobacco; and the act of 1794, *ch.* 53, *s.* 1, directs the levy court to meet on *some day between* the *first day of March* and *first day of October* annually, at the court-

house of their respective counties, to adjust the ordinary and necessary expenses of their several counties. From this examination of the acts of assembly, it is manifest that the levy court were not authorised to make the assessment under consideration, in November, the time they did make it. Where an authority is special, it must be strictly pursued. 1 *Salk.* 475. And where such authority is created by *statute*, it must also be strictly pursued. *Cowp.* 26, 29. If the power to do an act was originally granted *by statute*, it must be shown, in pleading such statute, that *the act was done according* to the *directions* of *that statute.* 4 *Bac.* 656. A writ of error only lies upon matter of *law* arising upon the face of the proceedings. 3 *Blk. Com.* 407. Consent to confess judgment *on terms* does not imply consent to bring no writ of error. 2 *W. Blk. Rep.* 780. The confession of judgment does not put the defendant in a worse situation than he would have been in if a verdict had been found against him. Where it appears from the *whole record* that the plaintiff has *no cause of action*, he shall never have judgment. Although a verdict be given upon *issue joined*, yet if, from the *whole record*, it appears the plaintiff had no cause of action, he shall not have judgment. If any thing be omitted *essential* to the action, or defence, as if the plaintiff sets forth a title which is defective in itself, it cannot be helped by verdict. 1 *Salk.* 365. 3 *Blk. Com.* 394. The court will arrest a judgment after verdict if it appears to be erroneous on the face of the record. 2 *Burr.* 927. In an action of debt on bond, it is a *matter* of substance to make profert of the bond, because it is *the contract* on which the court ought to found their judgment. *Bull. N. P.* 253. Where a person claims by a deed in the pleadings he must make a profert of it to the court. *Bull. N. P.* 249. *Esp.* 769. If an action is founded on a statute, the plaintiff must aver every thing which is requisite to entitle him to a judgment. 1 *Com. Dig.* 244. 5 *Com. Dig.* 49.

June 1800.

Quynn
vs.
The State

For these reasons, it is contended, this judgment should be reversed.

*Cooke, Mason* and *Harper,* for the defendant in error *(a).*

*Martin,* (Attorney General,) also for the plaintiff in error*(a)*

THE COURT OF APPEALS, at this term, *reversed* the judgment of the court below.

(a) The Reporters were unable to procure notes of the arguments of these gentlemen.

## COURT OF APPEALS, JUNE TERM, 1800.

### LAMOTT, *et al. vs.* STERETT.

A lessor is entitled to rent of the premises, although during the term the houses, &c. had been destroyed by fire, and notwithstanding the lessor, immediately after the fire, took possession of sundry articles, &c. and entered upon the premises, of which he made various uses.

If a sum of money is paid in part of a debt due on bond, &c. carrying interest, before the expiration of the year, such payment is to be deducted from the interest then due, and the residue, if any, from the principal; and the balance thus ascertained, decreed to be paid *with interest thereon* until paid.

APPEAL from the court of chancery. The case appears to be correctly stated by the counsel.

*Winchester,* for the Appellants. The appellants leased from the appellee a Brewery with its appurtenances, which, during the term, was destroyed by *fire.* The rents were fully paid up to the period of the destruction of the property. An action of *cove-. nant* was brought at law by the appellee, to recover rent arising after the fire, in which action he obtained judgment. The bill in chancery in this case, filed by the present appellants, prayed for relief against that judgment, and by the examination taken, it was fully proved that the appellee, immediately after the fire, took possession of sundry brewing utensils not consumed, and also entered upon the lot, of which he made various uses. These facts were not examinable at law from the nature of the pleadings. The chancellor directed an account to be stated between the parties, in which the right of the appellee to rent, after the destruction of the property, was acknowledged; and the appellants were also charged with interest. That account was confirmed by final decree. The appellants complain of that decree, and humbly insist that it ought to be reversed, and that relief should be granted them against the judgment at law. It is admitted, that an express covenant retains its